UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
F I L E D
OCT 21 2005
AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

CIVIL ACTION NO. 04-375-GWU

JAMES D. FRANCIS,                                                     PLAINTIFF,

VS.                   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff, James D. Francis, appeals from the negative administrative decision on his own applications for Child's Disability Insurance Benefits (CIB) and Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

## CHILD'S DISABILITY INSURANCE

An individual who becomes disabled as defined by 42 U.S.C. Section 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB. 42 U.S.C. Section 402(d)(1).

CIB benefits employ the same disability standards as are used to determine disability in adults. 42 U.S.C. Section 423(d).

1

Francis

## ADULT'S SUPPLEMENTAL SECURITY INCOME

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful

Francis

>activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the

Francis

contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

4

Francis

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the

5

ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services,

## DISCUSSION

The administrative law judge (ALJ) first determined that the doctrine of res judicata applied through January 30, 1997, when a final agency decision had been issued finding that Francis had "no severe impairment" in making a decision on prior applications for benefits. (Tr. 11-19, 249). With regard to the applicable period, the medical evidence was said to have established the existence of "severe" alcohol and marijuana dependence, cocaine and LSD abuse, allegedly in remission, a possible substance-induced mood disorder,[1] depression, estimated borderline to low average IQ, neck and low back pain, right knee pain by history and status post right wrist fracture with limited right wrist dorsiflexion. (Tr. 253). These impairments created

---

[1] Since the enactment of Pub. L. No. 104-121 (1996), substance abuse can no longer be considered an appropriate basis upon which to award benefits.

7

Francis

non-exertional impairments only, for which the vocational expert (VE) identified specific jobs at the medium, light and sedentary levels. (Tr. 251-254).

Vocational Expert Betty Hale had been present at the 2003 administrative hearing and had reviewed Exhibits 1 through B11 F. (Tr. 488, 504). She indicated that the plaintiff could not be considered to have any "past relevant work." (Tr. 504). She was then asked to assume the existence of an individual limited as follows: (1) an inability to lift more than 10 to 20 pounds with the right dominant hand, (2) no climbing of ropes, ladders or scaffolds, (3) no crawling or kneeling, (4) limited operation of foot pedal controls with the right leg, (5) limited flexion or extension of the right wrist, (6) moderate limitations on the ability to maintain attention, concentration or pace for extended periods, to work on a schedule, maintain attendance, and demonstrate punctuality within customary tolerances, to complete a normal workday or workweek without interruption from psychologically-based symptoms, or to tolerate changes in work routines, (7) a limitation to low stress, entry level work requiring only one/two/or three step procedures with no frequent changes in work routines and (8) no requirement of advanced literacy. (Tr. 505). In response, the VE named multiple jobs at various exertional levels. (Tr. 505-506).

One major question for review is whether greater restrictions would have been required by the record than were presented in the hypothetical question addressed to the vocational expert.

8

Francis

In connection with the present applications, Francis had indicated that he was disabled because of his "back and nerves" (Tr. 306) and that he had been in Special Education classes at school (Tr. 303). He later noted that his hand, neck and shoulder bothered him, and that he also had headaches and coughed up blood (Tr. 401), possibly due to a bleeding ulcer (Tr. 405). On one 2003 form, he mentioned being very depressed and having mood swings and panic attacks. (Tr. 412). The 26 year old claimant later testified at the 2003 hearing (Tr. 488) that his back and knee problems stemmed from a motor vehicle accident (Tr. 492-493) and that he had broken his wrist (Tr. 492) about 10 or 11 months previously but it had not healed properly (Tr. 494). He described constant migraine headaches and said that his nerves made him "shaky." (Tr. 498, 501). He noted that while he no longer suffered from mood swings and was no longer seeing a psychiatrist or psychologist, he did still have panic attacks. (Tr. 501).

New evidence relating to the plaintiff's mental condition included a report of a 2002 consultative mental health examination by Robert Eardley. (Tr. 414). Eardley diagnosed only an "anxiety disorder, NOS, by the claimant's statements" (Tr. 417). He noted that there was a history of polysubstance abuse, and left the issue of whether this abuse was actually in remission as an open question. (Id.). The examiner noted that since Francis' daily activities and interaction with family and friends did not seem to be markedly restricted (Id.) and he was cooperative during

9

Francis

the evaluation, he seemed to be able to make social and personal adjustments and exhibit sustained concentration (Tr. 418). According to Eardley, by the plaintiff's general statements he also did appear to have the ability to handle instructions. (Id.). Francis was noted to be adapting and tolerating stress associated with his day-to-day activity. (Id.). Reviewing this report (Tr. 431), one non-examining medical expert indicated that the plaintiff's mental impairment was not even at the "severe" level (Tr. 419) and another reviewer felt there were only the moderate mental limitations (Tr. 460-461) listed in the hypothetical (Tr. 505).

The year previously, the plaintiff had been evaluated by William Rigby. Rigby recorded IQ scores in the 70s (Tr. 317), with the observation that the claimant's observed intellectual functioning appeared "significantly higher" than the scores reflected (Tr. 318). The examiner diagnosed alcohol abuse, marijuana abuse,[2] and an anxiety disorder "by claimant report."[3] (Id.). The examiner listed several "good" abilities in many areas and only an undefined "fair" ability to tolerate stress and pressures of work activity. (Tr. 318).

---

[2] The plaintiff's statements on the topic of substance abuse were considered "suspect."

[3] Rigby pronounced the plaintiff free of major mental illness. (Tr. 318).

10

Francis

Given the fact that most of the Kentucky River Community Care[4] and S. Pearson Auerbach records referred to in the plaintiff's brief were from a period outside that under consideration, the mental factors were properly framed. Moreover, given the fact that Rigby did not define the use of the term "fair" for the one mental ability he listed as being less than the "good" level, the ALJ could appropriately rely on the equally-placed Eardley, and on the medical reviewers' assessments.

As regards his physical condition, no treating source ascribed functional limitations, despite the plaintiff's musculoskeletal complaints. Hughes Helm, an unlicensed examiner, had ascribed no limitations to the plaintiff (Tr. 437), but the ALJ did not rely on his opinion (Tr. 249, 251). Significantly, the plaintiff had also been evaluated by Joseph Agamasu, whose credentials were not in question and who also felt the plaintiff had no physical impairment (Tr. 323), as did non-examining medical experts such as Timothy Gregg (Tr. 345).

The plaintiff takes issue with various parts of the ALJ's opinion. Based on the whole of that opinion, and the fact that the record was replete with suggestions of

---

[4] A few Kentucky River Community Care records did exist for the period between February and April, 2001, but alcohol abuse (not a proper subject for an award of benefits, as noted previously) was the active diagnosis on several occasions (Tr. 310, 313). The patient was described as stable by April (Tr. 307) and services were ultimately terminated due to lack of contact.

11

Francis

malingering or credibility challenges (e.g., Tr. 252-252, 317, 417-418, 497; compare Tr. 322 to 412), the decision is supported by substantial evidence.

For these reasons, as well as those noted in the defendant's brief, the decision will be affirmed.

This the __/9__ day of October, 2005.

*[signature]*

G. WIX UNTHANK
SENIOR JUDGE